IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD ALAN BROWN, | No. 4:22-CV-01156 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CORPORAL FRANKS, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JUNE 14, 2023

Plaintiff Todd Alan Brown is currently confined at the State Correctional Institution in Camp Hill, Pennsylvania (SCI Camp Hill). He filed the instant *pro se* Section 1983[1] action claiming that he was subjected to excessive force during his arrest. Presently pending are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motions but permit Brown to file an amended complaint.

I. BACKGROUND

Brown filed the instant lawsuit when he was a pretrial detainee at a different state correctional institution.[2] The gravamen of his complaint is that, during his

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] *See* Doc. 1 at 2.

arrest on December 21, 2021, several police officers used excessive force and violated his constitutional rights.³

To recount the events of December 21, 2021, Brown appears to rely largely on the "Call Summary Report" created by defendant Corporal Bledsoe of the Mount Union Police Department.⁴ Because Brown cites to and relies on this document as an integral part of his complaint, the Court will utilize this report when determining the sufficiency of Brown's pleadings.⁵

On the afternoon of December 21, 2021, Bledsoe encountered Brown at a local Sheetz convenience store and informed him that he had an active arrest warrant for retail theft.⁶ Bledsoe noted that Brown appeared to be under the influence of opiates and that he was a "known heroin user," which Brown admits.⁷ Bledsoe attempted to take Brown into custody in a peaceful manner, explaining to him that the warrant had just issued the previous day, but Brown resisted arrest.⁸ Brown was able to extricate himself from Bledsoe's grasp by slipping out of his coat and backpack and began to flee on foot.⁹ Bledsoe then tased Brown, which caused Brown to fall to the ground.¹⁰ A "physical altercation ensued," during

---

3    *See* Doc. 1 at 4.
4    *Compare* Doc. 1 at 4, *with* Doc. 22-7 at 2-3.
5    *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
6    Doc. 22-7 at 2; Doc. 1 at 4.
7    Doc. 22-7 at 2; Doc. 1 at 4.
8    Doc. 22-7 at 2; Doc. 1 at 4.
9    Doc. 22-7 at 2.
10   Doc. 22-7 at 2; Doc. 1 at 4.

which Bledsoe placed Brown in a "head lock," Brown broke free from that head lock and pinned Bledsoe to the ground, and eventually Bledsoe warned Brown that if he did not cease resisting arrest, Bledsoe would "shoot him."[11] Brown then broke free of Bledsoe's grasp and fled on foot.[12]

Backup arrived and Brown was eventually located in the attic of a nearby house where he had overdosed the prior month.[13] Based on his knowledge of the layout of the house from the previous overdose incident, Bledsoe advised the other officers that "there may be a rifle upstairs" and to wait for a ballistic shield.[14] Defendant Corporal Franks obtained a ballistic shield and he—followed by defendant Trooper Yaworski, Bledsoe, and several deputy sheriffs—entered the second floor of the house, giving multiple verbal warnings to Brown to come out with his hands raised.[15] Finding the second floor clear, they entered the attic where they found Brown laying on his back and hiding underneath insulation.[16]

Franks and Yaworski gave several "loud verbal commands" for Brown to get up and to turn over onto his stomach.[17] Brown admits that he did not respond.[18] Franks and Yaworski then went "hands on" with Brown and physically

---

[11] Doc. 22-7 at 2; Doc. 1 at 4.
[12] Doc. 22-7 at 2; Doc. 1 at 4.
[13] Doc. 22-7 at 2; Doc. 1 at 4.
[14] Doc. 22-7 at 3; Doc. 1 at 4.
[15] Doc. 22-7 at 3; Doc. 1 at 4.
[16] Doc. 22-7 at 3.
[17] Doc. 22-7 at 3; Doc. 1 at 4.
[18] Doc. 1 at 4.

attempted to get Brown to put his hands behind his back.[19] Brown "woke up" but refused to put his hands behind his back, so Franks and Yaworski utilized "multiple compliance strikes to [Brown's] back and shoulders in an attempt to get control of his hands."[20] After getting Brown's hands behind his back, he was handcuffed.[21] Brown refused to stand up, so Franks and Yaworski had to drag him across the attic floor and down the stairs.[22] Once outside, Brown was unable to walk because his pants had fallen down and, when officers could not get his pants removed from around his shoes, the pants were cut off so that Brown could walk properly.[23]

Brown was noted to be bleeding from around the mouth and nose, so emergency medical services were called to the scene.[24] Brown then requested to be taken to the hospital, and he was transported to Geisinger Lewistown Hospital due to his injuries.[25] According to Brown, he was diagnosed with a hematoma of the right auricular region, a facial contusion, and opioid intoxication.[26]

---

[19] Doc. 22-7 at 3.
[20] *Id.*; Doc. 1 at 4.
[21] Doc. 22-7 at 3.
[22] *Id.*; Doc. 1 at 4.
[23] Doc. 22-7 at 3.
[24] *Id.*; Doc. 1 at 4.
[25] Doc. 22-7 at 3; Doc. 1 at 4.
[26] Doc. 1 at 4; Doc. 22-9. Again, Brown appears to rely on the Emergency Department discharge summary in his complaint, which document Defendants have provided.

Brown names four defendants: Franks, Bledsoe, "Malliband," and Yaworski.[27] Defendant Malliband was eventually dismissed under Federal Rule of Civil Procedure 4(m) after extensive service efforts were undertaken by the Court with no success.[28] Brown appears to assert claims under the Eighth, Fourteenth, and First Amendments.[29] The remaining three Defendants move to dismiss Brown's complaint under Federal Rule of Civil Procedure 12(b)(6).[30] Defendants' motions are fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[31] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[32] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as

---

[27] *See* Doc. 1 at 2-3.
[28] *See generally* Doc. 46.
[29] Doc. 1 at 5.
[30] *See generally* Docs. 21, 39, 50.
[31] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[32] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[33]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[34] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[35] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[36] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[37] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[38]

Because Brown proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[39] This is particularly true when the *pro se* litigant, like Brown, is incarcerated.[40]

---

[33] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[34] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[35] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[36] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[37] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[38] *Iqbal*, 556 U.S. at 681.
[39] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[40] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III. DISCUSSION

Before addressing Defendants' Rule 12 arguments, the Court must identify Brown's claimed constitutional violation or violations.[41] The crux of his complaint is that Defendants infringed his constitutional rights by using excessive force during his arrest.

Although Brown cites the First, Eighth, and Fourteenth Amendments in his pleading, this type of claim implicates only the Fourth Amendment.[42] At the time of the incident, Brown was being arrested on an outstanding warrant (he was not a convicted prisoner), so the Eighth Amendment does not apply.[43] Moreover, none of Brown's allegations could possibly implicate a First Amendment violation. Finally, although Brown filed the instant lawsuit when he was a pretrial detainee, he was not a pretrial detainee at the time of his arrest, so the Fourteenth Amendment's Due Process Clause does not apply to his excessive force claim.[44]

---

[41] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).

[42] *See Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021) (noting that the "Fourth Amendment protects citizens from objectively unreasonable uses of force in the context of arrests, investigatory stops, or any other seizure") (citing *Graham v. Conner*, 490 U.S. 386, 395-97 (1989)); *Graham*, 490 U.S. at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment[.]").

[43] *See Jacobs*, 8 F.4th at 193.

[44] *Cf. id.* at 193-94 (explaining that pretrial detainee's claim of excessive force against those detaining him implicated Fourteenth Amendment's Due Process Clause). To the extent that Brown mentions failure to provide adequate medical care, (*see* Doc. 1 at 5), that claim is asserted in another lawsuit pending before this Court. *See generally Brown v. Cruz*, No. 4:22-cv-1153 (M.D. Pa.).

Rather, Brown's allegations raise a claim of Fourth Amendment excessive force against Bledsoe, Yaworski, and Franks.

Brown's excessive force claims, however, suffer from multiple deficiencies. The Court will discuss these deficiencies in turn.

### A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[45]  Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[46]  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[47]

Brown's complaint is difficult to follow because he appears to be copying and pasting portions of the Call Summary Report, then intermittently injecting his own remarks.  Problematically, Brown continually uses the pronoun "they" in his complaint without appropriate clarification as to whom he is referring.[48]  For example, he claims that "they drug him across the attic floor down two different

---

[45]    *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[46]    *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).
[47]    *Id.* (quoting *Rode*, 845 F.2d at 1207).
[48]    *See* Doc. 1 at 4.

flights of stairs," and that "they" were "so r[ough] they ripped [his] pants and had to cut them."[49]  Using the Call Summary Report as a guide, it could be liberally construed that Brown is referring to Franks and Yaworski in these instances.[50]  But the Court will not make assumptions as to Brown's allegations of personal involvement in the use of excessive force, as such allegations are critical to his complaint.

### B. Fourth Amendment Excessive Force Claim

The larger problem with Brown's complaint is that, taking the complaint and Call Summary Report (on which the complaint relies) as true, Brown has not plausibly pled that excessive force was employed by any Defendant.

To state a Fourth Amendment excessive force claim, a plaintiff must allege "that a seizure occurred and that it was unreasonable under the circumstances."[51] Determining if the force used during a particular seizure was reasonable is an objective determination that requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[52]  After all, effecting a seizure (like an arrest or investigatory stop) "necessarily carries with it the right to use

---

[49] *See id.*
[50] *See* Doc. 22-7 at 3.
[51] *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020).
[52] *Graham*, 490 U.S. at 396 (internal quotation marks and citations omitted); *El*, 975 F.3d at 336.

some degree of physical coercion or threat thereof to effect it."[53]  Courts must consider the following factors when assessing the reasonableness of force employed: (1) "the severity of the crime at issue"; (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others"; (3) whether the suspect was "actively resisting or attempting to evade arrest by flight."[54]  Reasonableness of the force applied is a totality of the circumstances analysis based on the facts available to the officer at the time of the incident.[55]

Because reasonableness is a fact-intensive analysis that is dependent on an officer's conduct in light of the circumstances faced, Brown's complaint—which lacks necessary specificity—makes it difficult to assess whether his allegations rise to the level of a Fourth Amendment violation.  Nevertheless, when considering the above-referenced factors and the pleadings, the Court finds that Brown's allegations fall short.

While the initial crime for which Brown was being arrested was "retail theft,"[56] a relatively minor crime, by the time defendants Yaworski and Franks became involved, Brown had ostensibly committed a host of additional serious felonies, including disarming a law enforcement officer, aggravated assault, and

---

[53] *Graham*, 490 U.S. at 396. (citation omitted).
[54] *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007) (quoting *Graham*, 490 U.S. at 396).
[55] *See id.*
[56] *See* Doc. 1 at 4; Doc. 22-7 at 2.

escape.[57]  As to whether Brown posed an immediate threat to the safety of officers or others, it is clear that—following his encounter and physical struggle with Bledsoe—Brown represented a significant safety threat to any officer attempting to take him into custody.  Moreover, the officers believed that Brown may have been armed with a rifle, which Bledsoe had witnessed during a prior overdose incident with Brown in the same house.  Finally, it is plainly evident that Brown was actively resisting and attempting to evade arrest during the events on December 21.

When balancing these factors alongside the instant Fourth Amendment intrusions, Brown's allegations fall short of stating a constitutional violation.  According to the Call Summary Report, Brown immediately resisted arrest and instigated a physical confrontation with Bledsoe.  Brown appears to have escalated this encounter, eventually overpowering Bledsoe (even after being tased), pinning Bledsoe to the ground, and then taking flight on foot after Bledsoe threatened lethal force.  When Brown was found hiding in the nearby attic, he refused to comply with multiple verbal orders to give himself up and then resisted being handcuffed.  Officers applied force—compliance strikes—to get Brown to comply so that they could handcuff him.  When Brown refused to stand up and walk under his own power, officers physically removed him from the house.  None of these

---

[57]  *See Commonwealth v. Brown*, No. CP-31-CR-0000619-2021 (Ct. Com. Pl. Huntingdon Cnty.).

applications of force can be said to be objectively unreasonable under the facts as pled by Brown and shown in the Call Summary Report.

Brown's primary contention against Yaworski and Franks appears to be that, if "compliance strikes" were applied to his back and shoulders as reported, this does not explain the injuries to his mouth and nose.[58]  This allegation is problematic because Brown appears to be implying—without actually alleging—that he was struck in the head and face by one or several officers.  Yet nowhere in his complaint does he make such a claim, nor does he explicitly allege who took these unconstitutional actions to cause injuries to his face and head.[59]  This type of vague pleading that relies on inferences and fails to specify what actions were taken by a particular defendant is insufficient to plausibly state Section 1983 liability.[60]

In sum, when considering the totality of the circumstances as pled by Brown and contained in the Call Summary Report, Brown has not stated facts that objectively demonstrate that excessive force was employed by any Defendant.  The Court further observes that Brown attempts to include multiple additional

---

[58] *See* Doc. 1 at 4.
[59] In Yaworski's motion to dismiss, he contends that video of the altercation with Bledsoe shows that Brown fell while trying to flee from Bledsoe, possibly causing the injuries to his head and face.  *See* Doc. 22 at 6.  Nevertheless, the Court cannot review or rely on this video footage at the Rule 12(b)(6) stage, as it is not referenced or utilized in Brown's complaint.
[60] *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 285, 292-93 (3d Cir. 2018) (holding that, for excessive force claim, plaintiff alleging that one or more officers engaged in unconstitutional conduct must establish the "personal involvement" of each named defendant).

allegations in his briefs in opposition to Defendants' motions to dismiss.[61] This Brown cannot do. It is well settled that a plaintiff cannot amend his pleadings through a brief in opposition to a motion to dismiss.[62] If Brown wants to include additional allegations about the December 21 incident, he must do so in his pleadings, not in a brief.

## IV. LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[63] Here, leave to amend will be granted because it is conceivable that Brown could state an excessive force claim against one or several Defendants.

If Brown chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth Brown's claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Brown must address the deficiencies identified in this

---

[61] *See, e.g.*, Doc. 29 at 2-5; Doc. 52 at 1-5. For example, Brown alleges that when he was found in the attic, he was "overdosing" and that is why he was unresponsive to the officer's verbal commands. *See* Doc. 29 at 2; Doc. 52 at 3. He also asserts that he was "struck in the face and head while overdosing" and had to be given Narcan (naloxone) in the ambulance and again at the hospital. Doc. 29 at 2. None of these allegations appear in Brown's complaint or the Call Summary Report, and therefore the Court cannot consider them.

[62] *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

[63] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

Memorandum, and he must include all allegations within his pleading (not in extraneous filings).  He must also specify the offending actions taken by a particular defendant, sign the amended complaint, and indicate the nature of the relief sought.  If Brown is going to rely on other documents in his pleadings, he should include copies of those documents with his amended complaint.

## V.   CONCLUSION

Based on the foregoing, the Court will grant Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Leave to file an amended complaint will be granted.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge