IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD ALAN BROWN, | No. 4:22-CV-01156 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CORPORAL FRANKS, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

FEBRUARY 13, 2024

Plaintiff Todd Alan Brown is currently confined at the State Correctional Institution in Huntingdon, Pennsylvania (SCI Huntingdon). He filed the instant *pro se* Section 1983[1] action claiming that he was subjected to excessive force during his arrest. Brown's initial complaint was dismissed but leave to amend was granted. Presently pending are Defendants' motions to dismiss Brown's amended complaint under Federal Rule of Civil Procedure 12(b)(6). The Court will grant in part and deny in part Defendants' motions.

I.   BACKGROUND

Brown filed the instant lawsuit when he was a pretrial detainee at a different state correctional institution.[2] The gravamen of his lawsuit is that, during his arrest

---

[1]   42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]   *See* Doc. 1 at 2.

on December 21, 2021, several law enforcement officers used excessive force and violated his constitutional rights.[3]

Brown's amended complaint alleges the following. On December 21, 2021, defendant Corporal Derek Bledsoe encountered Brown at a Sheetz convenience store and informed him that he had an active arrest warrant.[4] Bledsoe noticed that Brown appeared to be under the influence of opiates, a fact which Brown admits.[5] Bledsoe grabbed Brown's arm to take him into custody, but Brown was able to free himself from Bledsoe's grasp by "slipping out of [his] jacket and backpack."[6] Brown then attempted to flee the scene on foot.[7]

Brown alleges that, without warning, Bledsoe deployed his taser and shot Brown in the back while he was attempting to flee, causing him to fall on his right hand.[8] Brown asserts that Bledsoe then "jumped on [his] back" and placed him in a "chokehold."[9] Brown maintains that the chokehold caused him to continue to resist due to "fear for [his] life."[10]

---

[3] *See* Doc. 1 at 4; *see generally* Doc. 61.
[4] Doc. 61 ¶ 1.
[5] *Id.* ¶¶ 1, 4; Doc. 61-2 (noting that Brown was diagnosed by medical providers with "opioid intoxication" and received naloxone or "Narcan" as part of his emergency treatment).
[6] Doc. 61 ¶ 2.
[7] *See* Doc. 61-1 at 1.
[8] Doc. 61 ¶ 2.
[9] *Id.* ¶ 3; Doc. 61-1 at 1.
[10] Doc. 61 ¶ 3.

Brown eventually was able to break free from Bledsoe's grasp again and fled on foot a second time.[11] He claims that he saw a friend, Ryan Dixon, and the two of them entered "William Spriggs[']" house.[12] They then heard a "loud banging" on the front door and Brown ran to the attic.[13]

Brown's amended complaint appears to jump forward in time to when police officers entered Spriggs' residence and located Brown, who was hiding in the attic. Brown alleges that he was "given multiple commands" by defendant Corporal Justin Franks, defendant State Trooper Yaworski, and Bledsoe.[14] He does not state what these commands were but claims that he did not respond due to being "in and out" of consciousness and "disoriented" because he was overdosing.[15]

Brown then asserts that Franks and Yaworski became "hands on," causing him to wake up, *i.e.*, "snapping [him] out of the overdose state."[16] He alleges that Franks and Yaworski "took turns" issuing multiple compliance strikes with their batons to his head, neck, back, and shoulders "in order to place him under arrest."[17] Brown maintains that he was having a medical emergency and was not a threat to the officers.[18]

---

[11] *Id.* ¶ 4; Doc. 61-1 at 1.
[12] Doc. 61 ¶ 4.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* ¶ 5.
[17] *Id.*
[18] *Id.*

He next asserts that Franks and Yaworski "drug him across the attic floor" while he was in and out of consciousness.[19] He additionally recounts that Franks "continued to drag" him down two flights of stairs and onto the front porch, which caused Brown's pants to fall down.[20] His pants were then cut off so that he could walk.[21]

Brown recalls that he was bleeding from his mouth, nose, and head, and that an ambulance was requested because of his injuries.[22] Brown was transported to Geisinger Lewistown Hospital for his injuries and received Narcan (naloxone) due to his opioid overdose.[23] According to Brown, he was diagnosed with a hematoma of the right auricular region, a facial contusion, and opioid intoxication.[24]

Brown initially sued four defendants: Bledsoe, Franks, Yaworski, and "Officer Malliband."[25] Defendant Malliband was ultimately dismissed under Federal Rule of Civil Procedure 4(m) after extensive service efforts were undertaken by the Court with no success.[26] The remaining three Defendants moved to dismiss Brown's complaint for failure to state a claim for relief, and the Court granted those motions but gave Brown leave to amend.[27]

---

[19] *Id.* ¶ 6.
[20] *Id.*
[21] *Id.*; Doc. 61-1 at 2.
[22] Doc. 61 ¶ 7.
[23] *Id.*
[24] *Id.* ¶ 9; Doc. 61-2.
[25] *See* Doc. 1 at 2-3.
[26] *See generally* Doc. 46.
[27] *See generally* Docs. 56, 57.

Brown filed an amended complaint in July 2023,[28] which is now the operative pleading. He attached as exhibits the "Call Summary Report" authored by Bledsoe, as well as the "After Visit Summary" discharge report from Geisinger Lewistown Hospital's emergency room.[29] Yaworski, Bledsoe, and Franks now move to dismiss Brown's amended complaint under Federal Rule of Civil Procedure 12(b)(6).[30] Their motions are fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[31] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[32] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[33]

---

[28] Doc. 61.
[29] Docs. 61-1, 61-2.
[30] *See generally* Docs. 62, 64, 66.
[31] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[32] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[33] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[34]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[35]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[36]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[37]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[38]

Because Brown proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[39]  This is particularly true when the *pro se* litigant, like Brown, is incarcerated.[40]

### III.  DISCUSSION

Before addressing Defendants' Rule 12 arguments, the Court must identify

---

[34] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[35] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[36] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[37] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[38] *Iqbal*, 556 U.S. at 681.
[39] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[40] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

Brown's claimed constitutional violation or violations.[41] The crux of his lawsuit is that Defendants infringed his constitutional rights by using excessive force during his arrest. He also claims that he lost his "wallet, ID, credit cards, money, cell phone, . . . backpack, jacket, electric tablet, clothes, and tattoo equipment" and was therefore "denied property without due process of law."[42]

At the time of the incident, Brown was being arrested on an outstanding warrant, so his excessive force claim implicates the Fourth Amendment.[43] His claim regarding the loss of personal property appears to sound in Fourteenth Amendment deprivation of property without due process of law. The Court will review the sufficiency of Brown's claims in reverse order.

A.  **Fourteenth Amendment Deprivation of Property**

Brown asserts that his personal property was wrongfully taken or lost, thus implicating a Fourteenth Amendment claim of deprivation of property without due

---

[41] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).

[42] Doc. 61 ¶¶ 11-12. At the end of his amended complaint, in his request for relief, Brown provides a laundry list of damages and (possibly) claims, *e.g.*, "intentional infliction of emotional distress, mental anguish, false arrest, false imprisonment, negligence, assault, [and] battery." *Id.* at p. 9. These claims are completely undeveloped, conclusory, and lacking even a bare recitation of the elements, and will therefore be disregarded. *Connelly*, 809 F.3d at 787.

[43] *See Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021) (noting that the "Fourth Amendment protects citizens from objectively unreasonable uses of force in the context of arrests, investigatory stops, or any other seizure") (citing *Graham v. Conner*, 490 U.S. 386, 395-97 (1989)); *Graham*, 490 U.S. at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment[.]").

process of law.[44] This constitutional tort, however, has significantly limited application. Most acutely, such a due process claim is unavailable when "adequate state post-deprivation remedies are available."[45]

Brown's deprivation-of-property claim fails for two reasons. First, his amended complaint is silent as to whether adequate state post-deprivation remedies exist for the loss of his personal property. The Court, however, observes that both state criminal procedure[46] and tort law[47] likely provide a remedy for claims like those Brown is asserting. Second, Brown has not pled if or how any defendant was personally involved with the loss of his wallet, identification, credit cards, money, or cell phone.[48] Even if he had, because adequate state-law remedies exist, this Fourteenth Amendment deprivation-of-property claim must be dismissed with prejudice.

---

[44] *See Hudson v. Palmer*, 468 U.S. 517 530, 533 (1984).
[45] *Id.* at 533.
[46] *See* PA. R. CRIM. P. 588(A) (providing legal process for aggrieved party to request return of seized property); *McKenna v. Portman*, 538 F. App'x 221, 224-25 (3d Cir. 2013) (nonprecedential) (finding that Pennsylvania Rule of Criminal Procedure Rule 588 "provides an adequate post-deprivation remedy when police seize property pursuant to an investigation").
[47] *See* 42 PA. CONS. STAT. § 8522(a), (b)(3) (waiving state statutory sovereign immunity for negligent acts related to the "care, custody or control of personal property in the possession or control of Commonwealth parties"); 42 PA. CONS. STAT. § 8542(a), (b)(2) (waiving local governmental immunity for negligent acts related to the "care, custody or control of personal property of others in the possession or control of the local agency"); *see also Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies).
[48] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted) (requiring personal involvement in alleged constitutional misconduct).

## B. Fourth Amendment Excessive Force Claim

To state a Fourth Amendment excessive force claim, a plaintiff must allege "that a seizure occurred and that it was unreasonable under the circumstances."[49] Determining if the force used during a particular seizure was reasonable is an objective determination that requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[50] After all, effecting a seizure (like an arrest or investigatory stop) "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[51] Courts must consider the following factors when assessing the reasonableness of force employed: (1) "the severity of the crime at issue"; (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others"; and (3) whether the suspect was "actively resisting or attempting to evade arrest by flight."[52] Reasonableness of the force applied is a totality of the circumstances analysis based on the facts available to the officer at the time of the incident.[53]

Because reasonableness is a fact-intensive analysis that is dependent on an officer's conduct in light of the circumstances faced, Brown's amended

---

[49]  *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020).
[50]  *Graham*, 490 U.S. at 396 (internal quotation marks and citations omitted); *El*, 975 F.3d at 336.
[51]  *Graham*, 490 U.S. at 396. (citation omitted).
[52]  *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007) (quoting *Graham*, 490 U.S. at 396).
[53]  *See id.*

complaint—which lacks specificity—makes it difficult to assess whether his allegations rise to the level of a Fourth Amendment violation. However, Brown also attached Bledsoe's highly detailed Call Summary Report as an exhibit to his amended complaint, allowing the Court to consider this document to fill in the factual gaps,[54] at least to the extent it does not contradict Brown's presumed-truthful allegations.

According to the Call Summary Report and the amended complaint, Brown immediately resisted arrest and instigated a physical confrontation with Bledsoe.[55] After resisting arrest and taking flight (and thereby committing additional, more serious criminal offenses for which Brown was later charged[56]), Bledsoe tased Brown. Brown, however, continued to escalate the encounter and physically resist arrest, eventually overpowering Bledsoe (even after being tased and put in a chokehold), and then took flight on foot again after Bledsoe threatened lethal force.[57] At one point, Brown even gained control of Bledsoe's taser.[58] When considering the totality of the circumstances as pled by Brown, these allegations—

---

[54] *See Mayer*, 605 F.3d at 230.
[55] Doc. 61 ¶¶ 1-2; Doc. 61-1 at 1.
[56] *See Commonwealth v. Brown*, No. CP-31-CR-0000619-2021 (Ct. Com. Pl. Huntingdon Cnty.).
[57] *See* Doc. 61-1 at 1.
[58] *See id.*; *see also* Doc. 78 at 7 ¶ 36 (in which Brown admits that he "disarmed" Bledsoe and "ran leaving the weapon behind, which [he] could have taken with him").

taken as true—do not objectively demonstrate that Bledsoe employed unreasonable force during the initial arrest attempt.[59]

However, as to Yaworksi and Franks, Brown's amended complaint plausibly alleges excessive force. In particular, Brown asserts that he was experiencing a medical emergency from an overdose of opioids and that is why he was unresponsive when he was found on the attic floor. His allegations that Yaworski and Franks beat him with their batons while he was on the floor "disoriented" from overdosing and going "in and out of" consciousness are sufficient to state a Fourth Amendment excessive force claim. While Yaworski and Franks tell a different story in their motions to dismiss (primarily through the Call Summary Report), at the Rule 12(b)(6) stage Brown's version of events must be taken as true.

In sum, Brown's Fourth Amendment excessive force claims may proceed against Yaworski and Franks. His excessive force claim against Bledsoe cannot. Dismissal of the Fourth Amendment claim against Bledsoe will be with prejudice,

---

[59] *See, e.g.*, *Geist v. Ammary*, 40 F. Supp. 3d 467, 476 (E.D. Pa. 2014) ("The use of a Taser during an arrest, especially when the suspect is resisting arrest, may be reasonable."); *Brown v. Cwynar*, 484 F. App'x 676, 678, 680 (3d Cir. 2012) (nonprecedential) (finding that deployment of a second taser against individual resisting arrest and refusing to comply with police orders was not unreasonable use of force); *Patrick v. Moorman*, 536 F. App'x 255, 259 (3d Cir. 2013) (nonprecedential) (tasing a fleeing bank robber who was resisting arrest was not excessive force); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (using a Taser on belligerent arrestee during traffic stop not excessive force when plaintiff repeatedly failed to follow officer's directives and plaintiff resisted arrest).

as Brown has failed to cure the deficiencies with this claim even after "amendments previously allowed."[60]

### C. Official Capacity Claims

Brown sues all Defendants in their individual and official capacities.[61] Suing Franks and Bledsoe in their official capacities is akin to suing the municipalities for which they work—Huntingdon Borough and Mount Union Borough, respectively.[62] To assert a Section 1983 claim against Huntingdon Borough or Mount Union Borough by way of an official capacity claim against a municipal employee, Brown must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury.[63] He must also plausibly plead facts showing that Franks and Bledsoe are decisionmakers endowed with authority to promulgate or establish an official custom or policy.[64] Brown has done neither, so any official capacity claim against Franks and Bledsoe must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[60] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").
[61] *See* Doc. 61 ¶ 18.
[62] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).
[63] *Id.* at 690-91.
[64] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (explaining that a decision to adopt a particular course of action made by the "government's *authorized decisionmakers*" represents an act of official government policy (emphasis added)); *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal decisionmaker" in his attempt to assert municipal Section 1983 liability).

As to Trooper Yaworski, who works for a state agency (the Pennsylvania State Police),[65] Brown's official capacity claim against him is barred by sovereign immunity. The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[66] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[67] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[68] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[69]

Brown seeks compensatory damages for his medical expenses and for pain and suffering.[70] To the extent those monetary damages are sought against Defendants in their official capacities, such claims are barred as explained above.

---

[65] *See* 71 PA. STAT. AND CONS. STAT. §§ 61, 732-102.
[66] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[67] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[68] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[69] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).
[70] Doc. 61 at p. 9.

Brown's single, vague request for "declaratory relief" is undeveloped and likely retrospective, rather than prospective, in nature. Thus, all official capacity claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

## IV. CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Brown's official capacity claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge