IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD ALAN BROWN, | No. 4:22-CV-01156 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CORPORAL FRANKS, *et al.*, | |
| Defendants. | |

# MEMORANDUM OPINION

### MAY 20, 2025

Plaintiff Todd Alan Brown is currently confined at the State Correctional Institution in Huntingdon, Pennsylvania. He filed the instant *pro se* Section 1983[1] action, alleging that he was subjected to excessive force during his arrest for the convictions for which he is currently imprisoned. Brown's remaining Fourth Amendment excessive force claim targets two defendants: Corporal Justin Franks and Pennsylvania State Police Trooper Yaworski. Both Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court will grant Defendants' motions for summary judgment.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.      **FACTUAL BACKGROUND**[2]

On the afternoon of December 21, 2021, Corporal Bledsoe of the Mount Union Township Police Department encountered Brown at a Sheetz convenience store on West Water Street.[3] Bledsoe was aware that there was an outstanding, active arrest warrant for Brown.[4] Bledsoe informed Brown about the outstanding warrant and attempted to take Brown into custody in a peaceful manner, grabbing his arm and pleading, "Please Todd, don't resist . . . don't pull away from me."[5]

Brown—who admits that he was under the influence of several controlled substances at the time—twisted out of his jacket and attempted to flee on foot.[6] At his deposition, Brown attested that he had consumed heroin and a large amount of

---

[2] Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements." *Id.* Defendants filed properly supported statements of material facts. *See* Docs. 102, 108. Brown eventually responded to these statements. *See* Docs. 119, 127. Brown's responses, however, are not supported by citations to the record and instead contain nothing more than argument or allegations. *See id.* This directly contravenes Local Rule 56.1. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts*, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence*." (emphasis added) (internal quotation marks and citations omitted)). Defendants' material facts, therefore, are deemed admitted unless plainly contradicted by the record. *See* LOCAL RULE OF COURT 56.1.

[3] Doc. 102 ¶¶ 6, 7, 10.
[4] *Id.* ¶¶ 8-9.
[5] *Id.* ¶¶ 12-13.
[6] *Id.* ¶¶ 14, 40, 42.

methamphetamine just prior to being dropped off at the convenience store.[7] Bledsoe pursued Brown on foot and deployed his taser, striking Brown in the back and causing him to fall to the ground.[8] A physical altercation between Bledsoe and Brown then ensued, which lasted for more than half a minute.[9] During this altercation, Brown succeeded in breaking free of Bledsoe's grasp, getting on top of Bledsoe, and disarming him by wresting away the taser and throwing it to the ground.[10] Brown then fled on foot, running in an eastbound direction.[11]

Bledsoe radioed for assistance and law enforcement officers from the Pennsylvania State Police, Huntingdon Borough Police Department, and Huntingdon County Sheriff's Office responded.[12] Bledsoe, who was familiar with Brown from a prior incident, informed the other officers that he believed Brown may have fled to a nearby residence on East Water Street where Brown had previously overdosed.[13]

When the officers arrived at the East Water Street residence, Corporal Franks knocked on the door.[14] Dennis Dixon opened the door and, upon questioning, confirmed that Brown was inside the residence.[15] Bledsoe also heard

---

[7] Id. ¶¶ 40, 42-45.
[8] Id. ¶ 15.
[9] Id. ¶¶ 17, 19.
[10] Id. ¶¶ 19-21.
[11] Id. ¶ 22.
[12] Id. ¶¶ 25-26.
[13] Id. ¶ 28.
[14] Id. ¶¶ 29, 30.
[15] Id. ¶¶ 31, 33.

movement on the second floor.[16]  Bledsoe gave loud verbal commands for Brown to come out with his hands raised, but there was no response from Brown.[17] Before officers entered the residence, Bledsoe informed Franks that there may be a rifle upstairs based upon his earlier observations when responding to Brown's prior overdose.[18]  The officers decided to wait for a ballistic shield before entering the residence, and one was eventually obtained.[19]

    The officers then entered the residence, searching for Brown.[20]  After clearing the first and second floors, they discovered Brown hiding in the unfinished attic.[21]  Brown was lying on his back between the rafters, partially hidden beneath the floorboards, with the top portion of his body covered by insulation.[22]  The officers gave loud verbal commands for Brown to get up and lie down on his stomach, but Brown did not respond.[23]  Corporal Franks and Trooper Yaworski then approached Brown and went "hands on," which is when Brown "woke up" from his overdose.[24]  Brown once again began struggling and resisting arrest,

---

[16]  *Id.* ¶ 32.
[17]  *Id.* ¶¶ 35-36.
[18]  *Id.* ¶ 37.
[19]  Id. ¶¶ 38-39.
[20]  *Id.* ¶¶ 60, 62.
[21]  *Id.* ¶¶ 51-53, 56, 62.
[22]  *Id.* ¶¶ 53, 63.
[23]  *Id.* ¶ 65.
[24]  *Id.* ¶ 66.  Brown attested that, while he was fleeing on foot to the East Water Street residence, he was holding a baggie of heroin laced with fentanyl that absorbed through his skin and caused him to overdose.  *Id.* ¶¶ 48-49, 54-57.

refusing to put his hands behind his back.[25] The officers then employed several "compliance strikes" to Brown's back and shoulders in an attempt to get control of his hands and place him into handcuffs.[26] After Brown was finally handcuffed, he refused to stand up on his own, so the officers were forced to carry him across the attic, down the stairs, and out of the residence.[27]

Brown was then transported by ambulance to Geisinger Lewistown Hospital.[28] Brown was given Narcan in the ambulance to counteract the overdose.[29] He was given a second dose of Narcan at the hospital.[30]

Brown eventually pled guilty to resisting arrest, disarming a police officer, and escape with respect to the incident that occurred with Corporal Bledsoe at the convenience store.[31] He pled no contest to two counts of resisting arrest with respect to his arrest in the attic by Corporal Franks and Trooper Yaworski.[32]

In July 2022, Brown filed the instant lawsuit.[33] His remaining Section 1983 claim against Corporal Franks and Trooper Yaworski alleges excessive force in violation of the Fourth Amendment regarding the arrest in the attic. Franks and

---

[25] *Id.* ¶ 67.
[26] *Id.* ¶¶ 68-69.
[27] *Id.* ¶¶ 69-70.
[28] *Id.* ¶ 71.
[29] *Id.* ¶ 73.
[30] *Id.* ¶ 79.
[31] *Id.* ¶¶ 1-2.
[32] *Id.* ¶¶ 3, 83-84.
[33] *See generally* Doc. 1.

Yaworski now move for summary judgment under Federal Rule of Civil Procedure 56.[34]  Their motions are fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[35]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[37]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[38]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[39]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving

---

[34] Docs. 101, 107.
[35] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[36] FED. R. CIV. P. 56(a).
[37] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[38] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[39] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

party on the claim or claims at issue.[40] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[41] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[42]

## III. DISCUSSION

Brown alleges that Franks and Yaworski used excessive force during his arrest in the attic on December 21, 2021. Upon thorough examination of the Rule 56 record, the Court disagrees.

"The Fourth Amendment protects citizens from objectively unreasonable uses of force in the context of arrests, investigatory stops, or any other seizure."[43] To establish a Fourth Amendment excessive force claim, a plaintiff must show that a seizure occurred and that it was "unreasonable under the circumstances."[44] Determining if the force used during a particular seizure was reasonable is an objective determination that requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

---

[40] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[41] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[42] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).
[43] *Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021) (citing *Graham v. Conner*, 490 U.S. 386, 395-97 (1989)).
[44] *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020).

countervailing governmental interests at stake."[45] After all, effecting a seizure (like an arrest or investigatory stop) "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[46]

Courts must consider the following factors when assessing the objective reasonableness of force employed: (1) "the severity of the crime at issue"; (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others"; and (3) whether the suspect was "actively resisting or attempting to evade arrest by flight."[47] Other relevant factors include "the physical injury to the plaintiff, the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."[48] Reasonableness of the force applied is a totality of the circumstances analysis based on the facts available to the officer at the time of the incident.[49]

After careful consideration of the record, the Court finds that nearly every relevant factor militates in favor of an objectively reasonable use of force by

---

[45] *Graham*, 490 U.S. at 396 (internal quotation marks and citations omitted); *El*, 975 F.3d at 336.
[46] *Graham*, 490 U.S. at 396. (citation omitted).
[47] *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007) (quoting *Graham*, 490 U.S. at 396).
[48] *El*, 975 F.3d at 336 (citation omitted).
[49] *See Curley*, 499 F.3d at 207.

Defendants, and therefore no jury could find in Brown's favor. The Court will examine each factor in turn.

The first factor is the severity of the crime. At the time of Brown's arrest in the attic, he had potentially committed a host of serious criminal offenses, including resisting arrest, disarming a police officer, and escape (not to mention the prior offense for which he had an active arrest warrant).[50] Brown, in fact, later pled guilty to these crimes.[51] The severity of the offenses weighs against Brown's contention of unreasonable force.

As to the second factor, it is obvious that Brown presented a significant safety threat to the officers and that the officers were cognizant of this threat. Just a short time earlier, Brown had easily recovered from being tased (likely because he was intoxicated on a large amount of methamphetamine), overpowered a police officer in a physical fight, disarmed that police officer, and then fled on foot.

The third factor also plainly cuts in favor of objectively reasonable force. Brown was both "actively resisting" arrest and "attempting to evade arrest by flight" when he was arrested by Franks and Yaworski. Brown had fled from Corporal Bledsoe and was hiding in the attic, attempting to evade arrest. And, according to Corporal Bledsoe's report, Franks and Yaworski struggled to take

---

[50] *See* Doc. 102-1 (*Commonwealth v. Brown*, No. CP-31-CR-0000619-2021 (Ct. Com. Pl. Huntingdon Cnty.)).
[51] *See id.*

9

Brown into custody and to place him in handcuffs, as he resisted arrest by refusing to put his hands behind his back or stand up on his own.[52]

Brown suffered only minor injuries from the arrest in the attic. At the hospital, he was diagnosed with an auricular hematoma (a collection of blood underneath the skin of the ear), prior bleeding from his mouth and nose, a facial contusion, and an opioid overdose.[53] He was treated only in the emergency room and was not admitted to the hospital. The minor nature of Brown's injuries implies that the force applied was not excessive.[54]

The fifth factor likewise cuts in favor of objectively reasonable force. It was more than just a possibility that Brown could be violent or dangerous—he had just recently shrugged off being tased, overpowered Corporal Bledsoe in a physical

---

[52] *See* Doc. 102-3 at 4. Brown pled no contest to the charges of resisting arrest stemming from the attic incident, explaining that he was "overdosing" and "going in and out" of consciousness, so he did not remember whether he resisted arrest in the attic. *See* Doc. 102 ¶¶ 56, 84-85; Doc. 102-5 at 5 (Brown Dep. 7:19-21); Doc. 102-5 at 31 (Brown Dep. 130:3-23).

[53] *See* Docs. 102-6, 102-7, 102-8. It is, of course, uncertain what injuries may have occurred during the first physical altercation with Corporal Bledsoe at the convenience store and what injuries—if any—came from Brown's subsequent flight and the arrest in the attic. The Court will view the facts in a light most favorable to Brown and assume, for summary judgment purposes, that any injuries diagnosed at the hospital came from the attic arrest.

[54] Brown alleges that his finger was broken on December 21, 2021. *See* Doc. 61 ¶ 17. There is no evidence in the Rule 56 record of when or how this alleged injury occurred (whether from falling after being tased, from the physical altercation with Bledsoe, from a fall in the attic as mentioned in the medical records, or from the purported compliance strikes by one of the Defendants). This alleged injury is not even mentioned in Brown's affidavit, the sole piece of evidence he provides in opposition to summary judgment. *See* Doc. 118-2. During his deposition, Brown provided only assumptions and speculation about how his finger was broken, (*see* Doc. 102-5 at 27-28 (Brown Dep. 123:17-124:11)), which is wholly insufficient at the summary judgment stage. *See Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017) ("[S]peculation and conjecture may not defeat a motion for summary judgment[.]" (alterations in original) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009))).

wrestling match, and disarmed Bledsoe by gaining control of his taser. Moreover, the officers were aware that Brown was a drug user (due to his previous overdose in the same residence) and could have been under the influence of narcotics.

The duration of the action was short. Franks and Yaworski first gave loud verbal commands for Brown to turn over and lie down on his stomach, to which Brown did not respond. Only then did they go "hands on," during which a brief struggle ensued where they employed compliance strikes on Brown's back and shoulders in order to handcuff Brown because he was resisting arrest. The brief duration of the use of physical force again favors an objectively reasonable application of force.

The seventh factor requires little discussion and likewise favors an objectively reasonable use of force. The at-issue force here took place in the context of effecting an arrest.

There was also a possibility that Brown could have been armed. Corporal Bledsoe informed the other officers that he had witnessed a rifle[55] in the East Water Street residence during Brown's prior overdose, and the officers in fact

---

[55] Brown contends that this was a "BB gun," not an actual rifle. *See* Doc. 102-5 at 5 (Brown Dep. 7:1-5). Assuming Brown is correct, it does not mean that Corporal Bledsoe acted unreasonably by believing there was a rifle in the residence, even if he was mistaken about the type of weapon he had witnessed. Indeed, it would make little sense that Bledsoe and the other officers waited for a ballistic shield to arrive if Bledsoe did not truly believe that there was a firearm in the residence. Moreover, an officer's conduct is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]" *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017) (quoting *Graham*, 490 U.S. at 396-97).

waited until a ballistic shield arrived to enter the residence and search for Brown. This eighth factor, like all previous factors, weighs in favor of objectively reasonable force.

The ninth and final factor is the only one that favors Brown's claim of excessive force. There were at least five law enforcement officers present in the attic to arrest a single person. There was, therefore, only one person with which multiple officers had to "contend," so this last factor slightly favors Brown.

When viewing the totality of the circumstances, no reasonable juror could conclude that Corporal Franks or Trooper Yaworski employed objectively unreasonable force during Brown's arrest in the attic.[56] Every relevant factor, save one, militates in favor of finding that Defendants used objectively reasonable force during Brown's arrest. Summary judgment, therefore, must be granted in Defendants' favor.

---

[56] *See Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (noting that, although reasonableness under the Fourth Amendment is often a question for the factfinder, a defendant can still prevail at summary judgment if the district court concludes that "the officer's use of force was objectively reasonable under the circumstances" (quoting *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999))). The case at bar is just such a case.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge